IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:23-CR-00469 |
| Plaintiff, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| CLARENCE PAYNE, | |
| Defendant. | MEMORANDUM OPINION & ORDER |

This matter is before the Court upon the United States of America's Motion to Deem Proposed Evidence "Inextricably Intertwined" with Charged Conduct or *Res Gestae* Evidence; or, alternatively, Notice of United States' Intent to Introduce Evidence under Rule 404(b) of the Federal Rules of Evidence filed on October 21, 2024 ("the Government's Motion"). (Doc. No. 50.) On October 28, 2024, Defendant Clarence Payne ("Defendant" or "Payne") filed Defendant's Motion in Opposition to the Government's Motion ("Defendant's Opposition"). (Doc. No. 52.) Although given until November 4, 2024 to do so, the Government did not file a reply in support of the Government's Motion. Accordingly, the Government's Motion is ripe for a decision. For the reasons stated herein, the Government's Motion is GRANTED IN PART AND DENIED IN PART, as set forth below.

**Background**

On February 21, 2024, a Second Superseding Indictment was filed charging Payne with: (1) Distribution of a Controlled Substance, and along with Defendant Harold Pearl ("Pearl") aiding and abetting the same, on or about August 17, 2023, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (Count 7ss); (2) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, on or about August 17, 2023, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 8s); (3) Felon

in Possession of a Firearm, on or about August 17, 2023, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Count 10s); (4) Felon in Possession of a Firearm, on or about August 30, 2023, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Count 11s); (5) Possession with Intent to Distribute Cocaine, on or about August 30, 2023, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 12s); and (6) Possession with Intent to Distribute Heroin and Fentanyl, on or about August 30, 2023, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 13s). (Doc. No. 27.) Thus, the Second Superseding Indictment charges Payne with offenses that occurred on or about two dates: August 17 and August 30, 2023.

In the Government's Motion, the Government asks this Court to deem certain evidence of Payne's actions from June 30, 2023 to August 17, 2023, which occurred in connection with the drug trafficking of Pearl, as "inextricably intertwined" with charged conduct or *res gestae* evidence. But if the Court declines to do so, then the Government, alternatively, provides notice to the Court and counsel for Payne of its intent to present evidence at trial pursuant to Rule 404(b) of the Federal Rules of Evidence.

The specific evidence that the Government asks this Court to deem as *res gestae* evidence pertains to Pearl's sales of cocaine to undercover ATF agents on June 21, June 30, July 6, July 13, August 4, and August 17 of 2023.[1] (Doc. No. 50, PageID # 407.) The Government's stated purpose in seeking to introduce evidence of Payne assisting Pearl in selling cocaine on these dates is to prove at trial what Payne is charged with doing in Counts 12s and 13s, i.e., possessing controlled substances, specifically large amounts of cocaine, and heroin/fentanyl found at Payne's residence during a search

---

[1] On September 25, 2024, Pearl plead guilty to this conduct. (Doc. Nos. 48, 49.)

2

of his residence conducted on August 30, 2023, with the intent to distribute them, and as part of that plan actually distributed cocaine through Pearl. (*Id.*, PageID # 408.) As to each of the dates that Pearl was charged with, and plead guilty to, selling cocaine,[2] the Government cites to the following evidence to demonstrate that "Pearl interacted with Payne over the phone and in person multiple times before, during, and after each cocaine sale." (*Id.*, PageID # 407.) The first is evidence gleaned through GPS location monitoring by the Electronic Monitoring Unit ("EMU") of the Cuyahoga County Sheriff's Office ("CCSO"). The second is Pearl's cell phone records. The third is evidence demonstrating that one of the numbers that Pearl called is associated with Payne's phone.[3] And the fourth is surveillance by ATF agents and Task Force Officers.

As to what the Government asserts are Payne's connections to Pearl's June 21, 2023 cocaine sale, the Government delineates the approximate times of Pearl's approximate general location in relation to the approximate locations of "Pearl's residence area," "Payne's residence," and the drug transaction or "deal;" and the times between 12:35 p.m. until 13:57 p.m. on June 21, 2023, that calls from Pearl's phone were made to and/or received from an ATF confidential informant ("CI"), and calls from Pearl's phone were made to and received from Payne's phone.

As to what the Government asserts are Payne's connections to Pearl's June 30, 2023 cocaine sale, the Government details the approximate times of Pearl's approximate general location in relation to the approximate locations of Pearl's residence area, Payne's residence, and the drug transaction or "deal;" and the times between 11:19 a.m. and 1:34 p.m. on June 30, 2023, that calls from Pearl's

---

[2] Those dates are June 21, 2023, June 30, 2023 July 6, 2023, July 13, 2023, August 4, 2023, and August 17, 2023.
[3] The Government represents the following. "The United States has evidence that the number associated with Payne's phone is connected to a CashApp user "Don Payne," which is in turn connected to an Instagram page "don_payne85." That Instagram page is followed by "westsideb881," Pearl's Instagram page. The Instagram page for user "don_payne85" shows numerous photos of a male that matches known photographs of Payne." (*Id.*, PageID # 409.)

phone were made to and from the CI, and a summary and some content of two outgoing calls from Pearl's phone to the CI's phone at 11:19 a.m. and 12:50 p.m., and calls Pearl's phone made to and from Payne's phone.

As to what the Government asserts are Payne's connections to Pearl's July 6, 2023 cocaine sale, the Government sets forth the approximate times of Pearl's approximate general location in relation to the approximate locations of Pearl's residence area, Payne's residence, and the drug transaction or "deal;" and the times between 12:23 p.m. and 1:32 p.m. on July 6, 2023, that calls from Pearl's phone were made to Payne's phone, and an incoming call from the CI to Pearl's phone. The Government also sets forth observations by ATF agents and TFOs who were conducting surveillance of Payne's residence, that were made between 12:35 p.m. and 2:14 p.m. on July 6, 2023. Those observations include watching Pearl get into a vehicle and arrive at Payne's residence and go into the residence within minutes of making calls to Payne and then exiting the residence and by vehicle proceeding directly to conduct the narcotics transaction.

As to what the Government asserts are Payne's connections to Pearl's July 13, 2023 cocaine sale, the Government represents the approximate times of Pearl's approximate general location in relation to the approximate locations of Pearl's residence area, Payne's residence, and the drug transaction or "deal;" and the times between 10:43 p.m. and 12:58 on July 13, 2023, that calls from Pearl's phone to the CI, and an incoming call from, and outgoing call to, Pearl's phone were made. The Government also asserts that after the July 13, 2023 drug transaction, surveillance units watched as Pearl entered into a blue Chevy Equinox and drove directly to Payne's residence.

As to what the Government asserts are Payne's connections to Pearl's August 4, 2023 cocaine sale, the Government represents the approximate times of Pearl's approximate general location in

relation to the approximate locations of Pearl's residence area, Payne's residence, and the drug transaction or "deal;" and the times between 11:57 a.m. and 3:44 p.m., that outgoing texts and calls to the CI were sent and made from Pearl's phone, and outgoing and incoming calls were made by and between Pearl's phone and Payne's phone.  The Government also asserts that at approximate times between 3:25 p.m. and 4:10 p.m., ATF and TFO agents were conducting surveillance of Payne's residence and saw Pearl and Payne together in the driveway.

As to what the Government asserts is evidence of Payne's connections to Pearl's August 17, 2023 cocaine sale, [4] the Government describes what ATF and TFO agents conducting surveillance on Payne's residence beginning at approximately 1:15 p.m. witnessed between 1:17 p.m. and 4:00 p.m., specifically to include interactions between Pearl and Payne, and Payne's participation in the drug transaction or deal that took place in the driveway of Payne's residence, between an ATF undercover agent ("UC") and Pearl who was seated in a vehicle with Payne.  The Governments represents that the UC observed a firearm on Payne's lap and Payne provided Pearl with a red scale that Pearl used to weigh the cocaine on the driver's floorboard.

The Government outlines what it intends to introduce in its case in chief, if available, associated with Pearl's cocaine sales on June 21, June 30, July 6, July 13, and August 4, 2023 as follows:  (1) videos and photographs of Payne's residence around the times of Pearl's cocaine sales; (2) location data showing Pearl's location around the time of his cocaine sales, in particular his travel to and from Payne's residence; and (3) observations, understandings, and interpretations by ATF agents interacting with Pearl and Payne during the cocaine sales or conducting surveillance around

---

[4] The Government represents that "[b]ecause Payne is charged [with] distributing cocaine with Pearl on August 17, 2023 (Count 7), evidence of this transaction is already part of the United States' case-in-chief because it concerns an existing count against Payne." (*Id.*, PageID # 415, fn. 1.)

5

the time of the sales. The Government represents that it "does not seek to introduce overly cumulative evidence of these events;" "does not intend to over-emphasize Pearl's conduct during the cocaine sales, except where his conduct implicates or otherwise implies Payne's involvement and to give the jury adequate context to the drug sales;" and "does not intend to introduce any evidence or otherwise imply that Payne was charged with additional crimes beyond those charged in the indictment." (*Id.*, PageID # 416.)

The Government argues that descriptions of the transactions conducted on June 21, June 30, July 6, July 13, and August 4 of 2023 are integral to understanding Payne's intent to distribute the larger bags of cocaine and heroin/fentanyl that agents found at Payne's Residence on August 30, 2023. Specifically, the Government argues that these "intrinsic" acts are, or uncharged background evidence is, "inextricably intertwined" with the underlying offenses and completes the story of, and have the necessary causal, temporal and spatial connection to, the offenses of Possession with Intent to Distribute Cocaine, on or about August 30, 2023, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 12s), and Possession with Intent to Distribute Heroin and Fentanyl, on or about August 30, 2023, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count 13s), with which Payne is charged. Therefore, according to the Government, they should be admitted. (*Id.*, PageID #s 416-17.)

Citing and quoting from Federal Rules of Evidence 401 and 403, the Government acknowledges that the evidence it asks this Court to admit must be relevant, and that its probative value must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. The Government argues that the evidence showing Payne's involvement in

Pearl's drug sales is highly probative of, and therefore relevant to, Payne's possession with intent to distribute charges because it shows Payne's state of mind in possessing the larger drug quantities, confirms his identity and connection to Payne's residence, shows Payne's larger purpose in interacting with Pearl and possessing controlled substances, shows Payne's intent and plan and knowledge of the substances and their values, and demonstrates Payne's absence of mistake in, or his ulterior motive for, interacting with Pearl.

The Government also argues that evidence depicting Payne's involvement in other drug transactions will not be unduly prejudicial because the probative value is high, and the risk of prejudice is small. And any such small prejudice to Payne, the Government submits, can be addressed or eliminated by a limiting instruction that the Government offers to draft for this Court's consideration.

The Government asserts that if this Court does not permit it to introduce the proffered evidence of Payne's connections to Pearl's cocaine sales as *res gestae* evidence, then it intends to introduce it under Federal Rule of Evidence 404(b). The Government argues that it can meet, and the Court should find that it can meet, the three-part test established by the Sixth Circuit for admission of Rule 404(b) evidence.

As to the first element, according to the Government, there is sufficient evidence to support a finding by the jury that Payne committed the other or similar act(s) in the form of photographic and video evidence of Pearl selling the cocaine and his guilty plea to the five transactions; evidence of regular interactions by Payne with Pearl via phone and in-person and Payne's presence during at least one of the cocaine sales; and testimony of ATF and TFO agents who witnessed seeing Payne interact

with Pearl around the times of each of the five cocaine sales, during some of which Pearl referenced his "supplier" before he contacted Payne.

As to the second element, whether the Government has identified a specific purpose(s) other than Payne's character, for which the evidence is offered and whether the identified purpose(s) is material or at issue in the case, the Government submits that the evidence of these other events would be offered to show Payne's state of mind, opportunity, intent, plan, knowledge, identity, absence of mistake, and lack of accident in possessing cocaine and heroin/fentanyl on August 30, 2023.

As to the third element, the Government asserts that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, i.e., the probative value is high and the danger of unfair prejudice, by comparison, is low. The Government submits that Payne is already charged with one distribution of cocaine, so the jury will hear that evidence and see Payne carrying a gun during that sale; and Payne admitted that he "is guilty" of evidence found at his house. (*Id.*, PageID # 22, citing to R. 43: Mot. Hrg. Trans., PageID # 313.) And according to the Government it will propose limiting jury instructions to advise the jury that it should only consider the evidence for the purpose(s) allowed by the Court.

In Defendant's Opposition, Payne submits that the proposed evidence that the Government seeks to introduce at trial is not "inextricably intertwined" with the offenses with which he is charged. According to Payne, he was not present during any of the drug transactions involving Pearl that occurred on June 21, June 30, July 6, July 13, and August 4, 2023, and these transactions did not occur at Payne's residence or in any vehicle connected to Payne. Payne submits that the Government cannot demonstrate that the drugs sold by Pearl on these dates came from Payne's residence or with Payne's assistance. Per Payne, although the Government alleges that he was communicating with

Pearl as outlined in the Government's Motion, the nature or content of the conversations is completely unknown; and there are no recorded phone conversations between Pearl and Payne and no text messages that support the Government's contention that Payne was assisting or providing the drugs for Pearl's transactions.  Payne submits that if the Government's Motion is granted and it is permitted to introduce at trial the evidence delineated in its Motion, the fact finder or jury will have to make numerous inferences that will be unfairly prejudicial to Payne.  And Payne asserts that the proposed introduction of this evidence is not necessary for the Government to adequately present its evidence on the actual crime charged.

In Defendant's Opposition, Payne argues that the introduction of this evidence pursuant to Rule 404(b) will create a danger of unfair prejudice to Payne at trial.  As to the first element of the three-part test, Payne asserts that it has not been met.   Payne acknowledges that there is ample evidence of Pearl's involvement in the drug transactions, but he contends that "it is questionable at best if Payne had any involvement or knowledge of Pearl's actions" since Payne was not present at any of the five transactions and "there is only speculation that he was involved or had knowledge of Pearl's drug sales."  (Doc. No. 52, PageID #s 437-38.)  Payne also argues that the second element or fact has not been met.  He interprets the Government's position to be that it "needs to introduce evidence of these five buys with Pearl in order to establish the intent and/or state of mind of Payne as it relates to the items discovered on August 30th," but reiterates that "there is an issue of whether or not Payne had any connection at all with Pearl's earlier dealings" and notes that there was no prior interaction with Payne or Pearl involving heroin/fentanyl (presumably as opposed to cocaine which is what Pearl sold on the five occasions that are the subject of the Government's Motion).  Payne also asserts that the third element or factor has not been shown.  He contends that the Government has

9

other means of proof without utilizing other acts evidence: the evidence stemming from the events on August 17 where Payne is alleged to have been in a vehicle with Pearl when Pearl engaged in a sale of cocaine to an undercover agent; and the evidence located during the execution of the search warrant at Payne's residence, to include the amount of cocaine and heroin/fentanyl located there, and other items that are indicative of drug trafficking. (*Id.*, at PageID # 438.)

### **Law and Analysis**

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In determining the admissibility of evidence under Rule 404(b), a district court must use the following three-step process: First, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect. *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003). *See also United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013). As to the second step, "[e]vidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *Jenkins,* 345 F.3d at 937 (quotation marks and citation omitted).

With certain exceptions, Rule 404(b) prohibits the admission of evidence of other crimes or wrongs 'to prove the character of a person in order to show action in conformity therewith.'" *United States v. Barnes*, 49 F.3d 1144, 1147 (6th Cir. 1995). The Sixth Circuit has held, however, that evidence falls outside the scope of Rule 404(b) where it "is 'inextricably intertwined' with evidence of the crime charged in the indictment." *Id*. at 1149 (quoting *United States v. Torres,* 685 F.2d 921, 924 (5th Cir. 1982)). Stated differently, Rule 404(b) "is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity," i.e., when an act is "intrinsic," or "part of a single criminal episode." *Id*.

"Background or *res gestae* evidence is an exception to Rule 404(b)." *Adams*, 722 F.3d at 810. *See also United States v. Clay*, 667 F.3d 689, 697 (6th Cir. 2012). Background evidence "consists of those other acts that are inextricably intertwined with the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* Concerned with the potential for abuse of background evidence to circumvent Rule 404(b), the Sixth Circuit has recognized "severe limitations as to 'temporal proximity, causal relationship, or spatial connections' among the other acts and the charged offense." *Clay*, 667 F.3d at 698 (quoting *Hardy*, 228 F.3d at 749). *See also United States v. Wardle*, 842 Fed. Appx. 993, 996 (6th Cir. 2021) (noting that the background circumstances exception to Rule 404(b) is "limited"); *Adams*, 722 F.3d at 810.

The Court concludes that the Government may introduce the proffered evidence associated with the transactions conducted on July 6, July 13, and August 4, 2023, but not evidence associated with the transactions that occurred on June 21 and June 30, 2023 for the following reasons. First, as distinguished from the proffered evidence associated with the transactions that Pearl engaged in on June 23 and June

11

30, 2023, the evidence of the drug transactions that Pearl engaged in on July 6, July 13 and August 4, 2023 consists not only of telephone calls by and between the CI and/or Payne and the location monitoring demonstrating the drug transactions in relation to the residences of Pearl and Payne and the telephone communications, but also includes evidence adduced through surveillance of Payne and Pearl being together at, or interacting in the driveway of, Payne's residence either directly before or after the drug transactions that Pearl engaged in on those dates and where on August 17, 2023 the undercover ATF agent actually conducted a drug transaction with Pearl and Payne who were together in a vehicle in Payne's driveway. Therefore, the Court finds that the proffered evidence associated with the drug transactions on July 6, July 13, and August 4, 2023 is admissible as *res gestae* evidence because it directly implicates Payne and constitutes background evidence that is "inextricably intertwined" with and probative of the offense of Possession with Intent to Distribute Cocaine on or about August 30, 2023 with which Payne is charged in Count 12s.[5] And limiting the Government to introducing evidence of these drug transactions, as distinguished from the earlier transactions that Pearl engaged in on June 23 and June 30 2023 satisfies the requirements relative to temporal proximity, causal relationship, or spatial connections among the other acts and the offense with which Payne is charged in Count 12s, and minimizes any unfair or undue prejudice to Payne.

The Court also finds that this evidence is relevant and admissible under Rule 404(b) to show an element of the charge in Count 12s, i.e., intent to distribute the cocaine (not heroin/fentanyl) located at his residence. The Court finds that with the surveillance conducted on July 6, July 13, and August 4, 2023 – along with evidence of the location monitoring and phone communications identified in the

---

[5] In Count 13s Payne is charged with Possession with Intent to Distribute Heroin and Fentanyl. Because the drug transactions that Pearl engaged in on July 6, July 11, and August 4, 2023 involved only the sale of cocaine, such evidence cannot be used in an attempt to prove or argue that Payne intended to distribute the heroin/fentanyl that was located in his residence; and the Government's proposed limiting instruction(s) must attempt to so clarify for the jury.

Government's Motion – there is sufficient evidence that the other acts occurred.  And, the Court finds that this evidence is probative of a material issue other than character, i.e., whether Payne intended to distribute the cocaine located in his residence during the August 30, 2023 search.  Finally, the Court finds that because the evidence is limited to the transactions that occurred on July 6, July 13, and August 4, 2023, the probative value is not substantially outweighed by the risk of unfair prejudice, confusion of the issues or misleading the jury.  Indeed, limiting the Government to introducing evidence associated with three of the five drug transactions will also prevent undue delay, waste of time, and the needless presentation of cumulative evidence.  And, to minimize the potential prejudice to Payne, the Government is ordered to draft proposed limiting jury instruction(s) as it offered to do, consistent with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

Date:  December 10, 2024

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE