IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23-CR-00469 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | UNITED STATES' RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| CLARENCE PAYNE, | ) | MOTION TO SUPPRESS EVIDENCE |
| | ) | OBTAINED THROUGH EXECUTION OF |
| Defendant. | ) | A SEARCH WARRANT |

Now comes the United States of America, by and through counsel, Carol M. Skutnik, Acting United States Attorney, and Adam J. Joines, Assistant United States Attorney, and respectfully submits this Response in Opposition to Defendant Clarence Payne's Motion to Suppress Evidence Obtained through Execution of a Search Warrant (R. 60, PageID 529–561 (hereinafter, the "Motion")). Evidence obtained on August 30, 2023, during execution of a federal search warrant of Payne's residence should not be suppressed because the warrant's supporting affidavit established probable cause and a nexus to Payne's possession of controlled substances and a firearm inside.

I.   **FACTS AND PROCEDURAL HISTORY**

On August 30, 2023, law enforcement found drugs and a gun at Payne's residence, which they searched pursuant to a warrant signed by Magistrate Judge Jennifer D. Armstrong on August 28, 2023. (*See* R. 60: Motion, PageID 560 (copy of warrant to search Mr. Payne's residence on W. 117th St. in Cleveland, Ohio). Because the Motion challenges agents' probable cause to conduct the search (*see* R.60: Motion, PageID 530–31), facts cited herein are taken from

1

the affidavit of Gregory Loerch, Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), which was sworn in support of the August 28, 2023 search warrant. (*See id.*, PageID 536–59 (copy of SA Loerch's affidavit)).

SA Loerch wrote the affidavit against the backdrop of his years of law enforcement training and experience. SA Loerch has worked for ATF since June 2018, and before that he served as a United States Secret Service Officer for seven years. (*Id.*, PageID 536–37). SA Loerch has trained in related fields, including in the execution of search warrants, firearms and narcotics investigations, electronic surveillance, and controlled substance distribution and trafficking. (*Id.*, PageID 537). His training and participation in narcotic investigations provides SA Loerch with an understanding of trafficking operations, including a dealer's need to maintain large amounts of currency and other valuables, possession of books and ledgers to log their trafficking business, possession of firearms to protect their property, and storage of the controlled substances they traffic. (*Id.*, PageID 538). SA Loerch is aware that a person who possesses firearms and distribution-amounts of controlled substances, each of which carries significant value because it is difficult to obtain and/or can be sold for a large profit, often keeps such valuable items "in safe areas so they are not lost or stolen." (*Id.*, PageID 551). Like most people with valuables, "drug traffickers and illegal firearm possessors keep their drugs and guns nearby, often in their homes, to maintain control over them." (*Id.*).

SA Loerch believed that he would find guns and drugs in Payne's residence because he and other law enforcement witnessed Payne's drug trafficking activities during their investigation in the summer of 2023. SA Loerch shared those facts, including his own observations and discussions with other law enforcement, in his affidavit. (*Id.*, PageID 539).

2

### A. Payne Is Identified as Assisting Co-Defendant Harold Pearl in a Series of Controlled Substance and Firearm Sales.

Payne became a person of interest to ATF during the summer of 2023 when agents purchased cocaine from co-defendant Harold Pearl. On June 21, 2023, ATF purchased 14.4 grams of cocaine from Mr. Pearl. (*Id.*, PageID 540). Because Pearl was wearing an electronic monitoring unit that day, ATF obtained GPS data that showed Pearl visited Payne's residence on W. 117th Street[1] immediately before and after he sold cocaine at 1:45 PM.[2] (*Id.*, PageID 541). Cell phone records further showed phone calls before and after the cocaine sale between Pearl and Payne. (*Id.*, PageID 541–42).

On June 30, 2023, ATF purchased cocaine a second time from Pearl. (*Id.*, PageID 542). Before and after Pearl's sale of 57.8 grams of cocaine, he visited Mr. Payne's house on W. 117th Street in Cleveland, Ohio. (*Id.*, PageID 542–43). Pearl also told ATF's confidential informant during phone calls organizing the deal that he was in contact with his source of supply and that they needed to finish the deal before 2 PM when his source went to work. (*Id.*). At the same time, Pearl and Payne were in constant communication via phone as Pearl traveled to and from Payne's residence. (*Id.*).

On July 6, 2023, ATF purchased cocaine a third time from Pearl. (*Id.*, PageID 543–44). As with previous deals, Pearl and Payne spoke on the phone before the deal, after the deal, and as Pearl traveled to and from Payne's house. (*Id.*). Also on July 6, ATF surveilled Payne's address on W. 117th Street. (*Id.*, PageID 544). Half an hour before the cocaine sale, at 12:36 PM

---

[1] Although the Motion does not appear to dispute that the house searched on August 30, 2023 on W. 117th Street is Payne's residence, SA Loerch's affidavit confirms that that house is Payne's listed address on his Ohio driver's license, and that law enforcement saw Payne entering and exiting the residence on several days in August 2023. (*Id.*, PageID 540).

[2] Per the affidavit, all times are approximate.

3

agents watched Pearl arrive in Payne's driveway, exit his vehicle, and enter Payne's front door. (*Id.*). He left Payne's residence 8 minutes before the cocaine sale, which occurred at 1:04 PM. (*Id.*, PageID 543). Once the deal concluded at 1:24 PM, Pearl returned to Payne's residence 9 minutes later. (*Id.*, PageID 543–44). Pearl exited the car and met with a man on the front porch of Payne's residence who matched Payne's description. (*Id.*, PageID 544). That same man exited the house a short while later, accessed the Cadillac parked in the driveway, and returned to the residence. (*Id.*, PageID 545).

On July 13, 2023, Pearl sold cocaine a fourth time to ATF agents. (*Id.*, PageID 545). As with prior sales, Pearl traveled to and from Payne's residence before and after the cocaine sale. (*Id.*). He made numerous phone calls to Payne before and after the sale. (*Id.*). On August 4, 2023, Pearl sold cocaine a fifth time, following the same pattern of visiting Payne's residence and talking to him via phone before and after selling 125.75 grams of cocaine to ATF agents. (*Id.*, PageID 546). Agents watching Payne's residence after the deal saw Pearl speak with Payne in the residence's driveway. (*Id.*, PageID 547).

### B. Payne Participates in a Controlled Substance Sale to ATF Agents While He Carried a Gun as a Prohibited Felon.

On August 17, 2023, Payne traveled from his residence on W. 117th St. so he and Pearl could sell cocaine to ATF agents. Before the deal, agents saw Pearl drive a gold Mercedes to Payne's residence, from which Payne exited. (*Id.*, PageID 548). Payne entered and exited the car to return to the residence twice before he returned to the Mercedes, after which the men drove away. (*Id.*). Pearl and Payne met the undercover ATF agents in the driveway of Pearl's residence on W. 48th St. in Cleveland, Ohio. (*Id.*). ATF purchased 116 grams of cocaine from Pearl as Payne sat in the passenger seat holding a black firearm. (*Id.*). When ATF asked for a "calculator" (scale), Payne grabbed a red scale that he handed to Pearl, who weighed the cocaine.

4

(*Id.*). Payne and ATF spoke about the firearm, during which Payne said the firearm was not for sale, described it as a model XD (Springfield), and took out the magazine to show it was loaded. (*Id.*). SA Loerch's affidavit included photographs of Payne holding a gun. (*Id.*, PageID 549). Payne and Pearl left the cocaine deal as ATF surveillance units followed them directly back to Payne's house. (*Id.*). Pearl parked the Mercedes in the driveway while Payne, still holding the red scale, entered the residence. (*Id.*). The affidavit noted that Payne has multiple prior felonies for drug trafficking, aggravated assault, and drug possession, each of which prohibited his possession of a firearm. (*Id.*, PageID 540).

    **C.    Law Enforcement Obtains a Search Warrant to Search Payne's Residence and Executes That Warrant.**

SA Loerch sought a search warrant for Payne's residence based on Pearl's references to his source of cocaine supply during the drug deals; numerous phone calls between Pearl and Payne bracketing the controlled purchases of cocaine; Pearl's visits and interactions with Payne at Payne's residence before and after multiple cocaine sales in June, July, and August; and Payne's illegal possession of a firearm and assistance in a cocaine sale on August 17. He did so toward finding Payne's firearm, which Payne declined to sell. SA Loerch explained that a person who has a firearm today is likely to have it for "several months or even years." (*Id.* PageID 550). Such a valuable commodity would, according to SA Loerch, likely be kept in Payne's home. (*Id.* PageID 551). Similarly, SA Loerch sough to search Payne's residence for drugs and trafficking evidence because Pearl's "pattern of . . . traveling to and from Payne's residence before and after the [confidential informant] ordered cocaine shows that Pearl goes to the residence to obtain the cocaine, leaves to conduct[] the deal, returns to [Payne's residence] to give money to the source of supply, PAYNE." (*Id.*). Attachment A to the affidavit identified trafficking and firearms-related items that, if found, ATF intended to seize during the search

5

warrant as being either evidence or related to the crimes under investigation. (*Id.*, PageID 553–57). Attachment B (mistakenly titled Attachment A) described with particularity Payne's residence that ATF intended to search. (*Id.*, PageID 558–59).

Judge Armstrong reviewed and signed the search warrant on August 28, 2023. (*Id.*, PageID 560). ATF executed the search warrant two days later on August 30. Inside, agents found a Springfield Armory, Model: XD-40, 40 caliber pistol that an ATF nexus agent confirmed looks identical to the firearm that Payne held on August 17 during the cocaine sale. Next to the firearm was approximately 292.88 total grams of cocaine in eleven different baggies packaged similarly to what agents previously purchased from Pearl. Agents also found 10.31 grams of a mixture of heroin and fentanyl (among three bags).

Payne was later indicted by the Grand Jury for possessing the firearm as a convicted felon, distributing and possessing with intent to distribute controlled substances, and carrying a firearm in furtherance of a drug trafficking offense. (R. 27: Second Superseding Indictment, PageID 198–201). He now challenges the sufficiency of the affidavit that resulted in law enforcement's seizure of a gun and drugs in his residence. But despite Payne's claims that the affidavit "failed to establish a nexus" between the criminal conduct investigated and Payne's residence (R.60: Motion, PageID 535), the judicially-signed warrant presented more than enough facts to show probable cause in support of law enforcement's request.

**II.     ARGUMENT**

The Fourth Amendment protects against unreasonable searches and seizures and provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly

6

> describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. As such, a warrant may not issue absent probable cause, which requires a reasonable basis for believing that evidence of crime will be found in a particular place under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230–35 (1983). "The probable cause requirement . . . is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *United States v. Besase*, 521 F.2d 1306, 1307 (6th Cir. 1975). The degree of certainty required in an affidavit in support of a search warrant is not measured by a "more likely than not" inquiry. *Greene v. Reeves*, 80 F.3d 1101, 1105 (6th Cir. 1996) (reversing district court's finding of no probable cause, holding it erred in applying a preponderance standard to the determination); *see United States v. Bass*, 785 F.3d 1043 (6th Cir. 2015) (totality of circumstances supported claims in search warrant affidavit that evidence of fraud would be discovered in defendant's cell phone).

Reasonable grounds for belief that there is probable cause is "supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (citation omitted). In making a probable cause determination, a judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999). An affidavit is "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). Search warrants are, therefore, judged on the totality-of-the-circumstances. *Id.* (citing *Gates*, 462 U.S. at 239). When

reviewing a judge's probable cause determination, courts give great deference to the issuing judge's determination of probable cause. *United States v. Tagg*, 886 F.3d 579, 586 (6th Cir. 2018); *see also United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013) (a court reviewing the sufficiency of a search warrant affidavit should "accord the magistrate's determination 'great deference'" (quoting *United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008)). In the trafficking context, a magistrate judge reviewing a search warrant also may "infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking" (*United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008)) because "evidence is likely to be found where the dealers live" (*United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) (citation and alteration omitted)).

### A. The Affidavit Provides a Sufficient Nexus to Search Payne's Residence.

To support "a finding of probable cause, there must be a 'sufficient nexus' between the place searched and the evidence sought." *United States v. Kenny*, 505 F.3d 458, 461 (6th Cir. 2007) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). Law enforcement can "infer a nexus from 'the type of crime being investigated, the nature of things to be seized, and the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places.'" *United States v. Brooks*, No. 1:22-CR-00679, 2023 WL 7130780, at *4 (N.D. Ohio Oct. 30, 2023) (Barker, J.) (quoting *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014). Probable cause does not require an actual showing of criminal activity at a particular location, but a "probability or substantial chance of criminal activity." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991).

Law enforcement presented a sufficient nexus between Pearl's drug trafficking and Payne's assistance in that drug trafficking by his likely supplying Pearl with cocaine, aiding Pearl during a drug deal, and illegally carrying a firearm. In his affidavit, SA Loerch outlined

8

Payne's involvement in the controlled purchases of cocaine from Pearl on June 21, June 30, July 6, July 13, and August 4, 2023. (R. 60: Motion, PageID 541–547). SA Loerch described—often with precision to the minute—Pearl's phone calls and visits with Payne before each drug deal. He described with equal precision when Pearl contacted and visited Payne at his residence after each drug deal. He described how ATF saw Payne at his residence on August 4, during which Payne interacted with Pearl shortly after conducting the deal. All of these observations were consistent with a drug trafficking relationship in which, in SA Loerch's training and experience, the seller (Pearl) obtains cocaine from the source (Payne) at his residence, conducts the deal, and returns to the source's house with the money once the sale is complete. (*Id.*, PageID 551). All of this supported SA Loerch's conclusion that narcotics, trafficking instrumentalities, and similar evidence of the cocaine sales were likely to be found in Payne's residence.

Payne's direct involvement in Pearl's drug deals further link the investigated illegal conduct to Payne' residence. SA Loerch's affidavit described how Payne assisted Pearl in selling cocaine on August 17, 2023, specifically by displaying a fire and providing Pearl with a scale to weigh the drugs. (*Id.*, PageID 547–49). He included photos and descriptions of Payne carrying a firearm during the deal, despite Payne being prohibited from legally possessing that firearm due to his seven prior drug and assault felonies. (*Id.*, PageID 540 (prior felonies), 548–49 (Payne's possession of the firearm)). SA Loerch also explained how, after the sale, ATF agents watched Payne return to his residence carrying the same red scale. (*Id.*, PageID 549). And because firearms are valuable commodities for which Payne could not legally purchase a replacement, SA Loerch identified Payne's residence as a likely place he would store the firearm he was carrying. (*Id.*, PageID 551). These direct connections to the investigated crimes only

9

gave law enforcement additional reason to believe that they would find evidence at Payne's residence.

In sum, the four corners of SA Loerch's affidavit provided sufficient probable cause that evidence of criminal activity would be found at Payne's residence. The observations and other information contained in the affidavit provide a nexus between the activity and residence based on the totality of the circumstances. The affidavit provides this Court with a substantial basis for concluding that the search would uncover evidence of criminal activity as required by the Fourth Amendment. *See Gates*, 462 U.S. at 238.

### B. Payne's Arguments to the Contrary Only Identify Facts Not Available, Which Do Affect the Probable Cause When Considering the Affidavit in the Totality of the Circumstances.

The Motion attempts in various ways to chip away at the affidavit's probable cause by referencing facts it does not include. Those attempts are misguided. It is irrelevant, for example, that Payne was not physically present for certain cocaine deals between undercover ATF agents and Pearl on June 21, June 30, July 6, July 13, and August 4, 2023. (R. 60: Motion, PageID 530). The lack of this specific detail glosses over how the Court evaluates an affidavit's probable cause based on the totality of the circumstances. *Allen*, 211 F.3d at 975. The totality of these circumstances, viewed through the lens of SA Loerch's experience, established Payne's connection to, if not participation in, Pearl's prior drug sales. The affidavit described Pearl's traveling to Payne's house before the drug deal and returning to the same house once the deal finished. It described Payne's numerous phone calls and communications with Pearl as Pearl coordinated deal logistics. The affidavit explained the numerous touchpoints between Pearl's drug transactions and Payne at his residence. It also described the August 17 deal, when Payne was physically present with Pearl during a cocaine sale and participated by helping Pearl weigh

10

the drugs. That Payne was not present for some transactions carries little weight given the other evidence of his involvement.

The Motion's argument that no drug purchases occurred from Payne's residence and that officers did not conduct trash pulls (R. 60: Motion, PageID 532) similarly miss the mark. An affidavit is not judged on "what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975. There forever will be more things an affidavit could contain to further establish a nexus; their absence carries no weight when the proper evaluation involves reviewing what facts and connections the affidavit contains. Here, SA Loerch's affidavit contains facts establishing how Pearl used Payne's residence as his starting and ending point for each sale. It explained how Payne carried a gun and participated in one drug transaction with Pearl on August 17. It stated how Payne, after using a red scale to weigh cocaine, walked back into his house carrying the scale and, presumably, the gun he displayed to undercover ATF agents minutes earlier. Even if ATF surveillance did not see Pearl enter Payne's house on certain days (R. 60: Motion, PageID 534), the affidavit does not collapse all the facts that support the reasonable inference that Payne keeps his firearm and drugs in that house. The Motion does not critique this support within the affidavit; highlighting hypothetical facts SA Loerch might have included under different circumstances has no impact. Because a reviewing magistrate judge determined the affidavit provided sufficient probable cause despite these absences, this Court should find likewise and deny the Motion.

**C.      This Court Is Not Precluded from Applying the Good Faith Exception.**

Even if this Court disagrees that the affidavit reviewed and signed by the Magistrate Judge contains sufficient probable cause, ATF agents executing it had a good faith basis to believe that the warrant was valid. Fourth Amendment exclusion does not apply where "law enforcement officers acted in good faith and reasonably relied on a search warrant that is

11

ultimately found invalid." *United States v. Thomas*, 605 F.3d 300, 311 (6th Cir. 2010). If a reviewing court determines a search warrant is deficient, it must then determine "whether a reasonably trained police officer would have known that the search was illegal despite the magistrate [judge's] authorization." *United States v. Leon*, 468 U.S. 897, 923 n.23 (1984). To help answer that question, the Supreme Court identified four specific situations where suppression may be proper:

> 1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; 2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; 3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and 4) when the warrant is so facially deficient that it cannot be reasonably presumed to be valid.

*United States v. Thomas*, 605 F.3d 300, 311 (6th Cir. 2010) (citing *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir.2005); *Leon*, 468 U.S. at 923. None of those hypothetical examples are present here. First, SA Loerch provided facts based on his knowledge of the ongoing investigation into Pearl and Payne. The Motion makes no claims that the affidavit contains false information, let alone that it was drafted recklessly in disregard of the truth. *See also United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002) ("Minor discrepancies in the affidavit may reflect mere inadvertence or negligence, rather than the reckless falsehood that is required for exclusion."). The Court should not jump to the unfounded assumption otherwise. Second, there is no indication that the magistrate judge who signed the search warrant for Payne's residence acted in any way other than neutral. Third, the affidavit is not "bare bones" such that it lacks the connections necessary for a reasonable person to believe it is supported by probable cause. To the contrary, the affidavit connects a series of verified drug trades—including one in which Payne participated—to Payne's residence and his suspected illegal activities. Finally, there is no

suggestion that the warrant is facially deficient. Based on the *Leon* factors, even if this Court determines the warrant lacked probable cause, agents had a good faith basis to believe the warrant issued was valid. Because "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion" in this case, this Court should find that reliance was objectively reasonable and decline to suppress any evidence. *Leon*, 468 U.S. at 922.

**III.  CONCLUSION**

For the foregoing reasons, Payne's challenge to the probable cause within the search warrant fails. This Court should therefore deny Payne's Motion.

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney

/s/ Adam Joines
Adam Joines (OH: 0094021)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3929
(216) 522-8355 (facsimile)
Adam.Joines@usdoj.gov