IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:23-CR-00469 |
| Plaintiff, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| CLARENCE PAYNE, | |
| Defendant. | MEMORANDUM OPINION & ORDER |

This matter is before the Court upon Defendant Clarence Payne's ("Defendant" or "Payne") Motion to Suppress Evidence Obtained Through Execution of a Search Warrant filed on December 26, 2024 ("Defendant's Motion"). (Doc. No. 60.) On March 3, 2025, the United States of America filed a Response in Opposition to Defendant's Motion ("the Government's Response"). (Doc. No. 69.) Defendant did not file a Reply in support of Defendant's Motion. Accordingly, Defendant's Motion is ripe for a decision.

**Background**

The charges that Defendant faces for alleged conduct occurring on August 17, 2023 and August 30, 2023 are outlined in the Court's Memorandum Opinion and Order issued on December 10, 2024, and will not be reiterated herein.[1] In Defendant's Motion, Payne argues that the Affidavit prepared and averred to by Gregory Loerch, Special Agent with the ATF ("SA Loerch") and signed by Magistrate Judge Jennifer D. Armstrong on August 28, 2023 to search the premises of 3464 W. 117th Street, Cleveland, Ohio, ("the premises") lacked probable cause that firearms and/or drugs

---

[1] (Doc. No. 55, PageID #s 474-75.)

would be located therein, because "there is an insufficient nexus between the conduct alleged in the Affidavit and the property that was ultimately searched."[2]

In support thereof, Payne notes or acknowledges that the Affidavit includes averments concerning a series of five buys that occurred between co-defendant Harold Pearl ("Pearl") and members of the ATF with the assistance of a Confidential Informant ("CI") on June 2, June 30, July 6, July 13, and August 4, 2023. However, Payne argues that Affidavit lacked probable cause for the following reasons.

The Affidavit demonstrates that Payne was not present for any of these five buys and that none of the buys occurred at or near the premises. According to Payne, although the Affidavit does include averments that Pearl communicated with a phone number associated with Payne before and after the five buys, the Affidavit does not set forth or include the contents of the communications. And, although the Affidavit outlines how law enforcement utilized Pearl's GPS location monitoring to track Pearl's general locations before and after the five buys and contains averments that Pearl visited the premises before and after the five drug transactions, the following remains. The Affidavit only sets forth or includes an averment that Pearl was seen entering and exiting the premises on July 6, 2023, but does not include any averments that Pearl was seen entering and exiting the premises on the dates of the other four transactions. And even though the Affidavit includes the averment that Pearl was seen entering and exiting the premises on July 6, 2023, there is no indication or averment in the Affidavit that Pearl was seen in possession of any contraband on that date.

---

[2] (Doc. No. 60, PageID # 530.) The search warrant was executed at the premises on August 30, 2023.

2

Payne notes or acknowledges that the Affidavit includes averments associated with an "additional drug transaction that occurred on August 17, 2023,"[3] to wit: Payne was picked up at the premises by Pearl in a gold Mercedes;[4] they traveled to Pearl's residence[5] where Pearl sold cocaine to an ATF UC and a CI, and Payne was seen with a firearm in his possession;[6] the two traveled back to Payne's residence and when both were seen exiting the car and entering the residence, Payne had the red scale in his hand.[7]  However, Payne points to what the Affidavit does not include:  that the gold Mercedes belonged to Payne; and any nexus between the firearm seen in Payne's possession on August 17, 2023 and the premises.  In summary, Payne asserts that law enforcement did not make any buys out of his residence, no drugs or firearms were observed being taken in or out of the premises, and no trash pulls were conducted from the residence.  According to Defendant, the Affidavit "is speculative at best and lacks the necessary probable cause of issuance of the Search Warrant."[8]

In the Government's Response, the Government points to averments included in the Affidavit to demonstrate SA Loerch's employment history in law enforcement, his training and participation in the execution of search warrants, firearms and narcotics investigations, electronic surveillance, and controlled substance distribution and trafficking, and his understanding of trafficking operations gleaned thereby.  Based thereupon, the Government contends that "SA Loerch believed that he would find guns and drugs in Payne's residence because he and other law enforcement witnessed Payne's

---

[3] (*Id.*, PageID # 531.)
[4] (*Id.*, PageID # 548.)
[5] Pearl's residence was 3139 W. 48th Street.  (*Id.*, PageID # 548.)
[6] (*Id.*)
[7][7] (*Id.*, PageID #s 548-50.)
[8] (*Id.*, PageID # 535.)

3

drug trafficking activities during their investigation in the summer of 2023."[9] Then, as set forth more fully below, the Government cites to portions of the Affidavit to demonstrate that there was probable cause for SA Loerch to believe that Payne was illegally in possession of a firearm and trafficking controlled substances and that Payne was using the premises to further his and Pearl's drug trafficking operation.

The Government cites to the Affidavit to demonstrate that on June 21, 2023, ATF purchased 14.4 grams of cocaine from Pearl, GPS data demonstrated that Pearl visited the premises immediately before and after he sold the cocaine, and cell phone records showed phones calls between Pearl and Payne before and after the cocaine sale.[10] The Government cites to the Affidavit to demonstrate that on June 30, 2023, ATF purchased cocaine a second time from Pearl, before and after that sale Pearl visited the premises, Pearl and Payne were in constant communication via phone as Pearl traveled to and from the premises, and that Pearl told ATF's CI during phone calls organizing the deal that he was in contact with his source of supply and that they needed to finish the deal before 2:00 p.m. when his source went to work.[11]

The Government cites to the Affidavit to demonstrate that on July 6, 2023, ATF purchased cocaine a third time from Pearl at his residence on W. 48th Street and that Pearl and Payne spoke on the phone before and after the deal and as Pearl traveled from his residence to the premises.[12] Also, surveillance conducted of the premises showed that half an hour before the cocaine sale, agents

---

[9] (Doc. No. 69, PageID # 598.  The Government cites to the Affidavit, at PageID #s 536-538 in support of its assertions concerning SA Loerch's training, experience, knowing and understanding concerning trafficking operations.
[10] The Government cites to the Affidavit attached to Defendant's Motion, Doc. No. 60, at PageID # 540.  However, the averments associated with the June 21, 2023 controlled buy included in the Affidavit are set forth in paragraph 11 of the Affidavit.  (Doc. No. 60, at PageID #s 541-42.)
[11] (*Id.*, PageID #s 542-43.)
[12] (*Id.*, PageID #s 543-44.)

4

watched Pearl arrive at the premises, exit his vehicle, enter Payne's front door, and leave the premises 8 minutes before the cocaine sale;[13] and after the sale was made, agents saw Pearl return to the premises and meet a man on the front porch who matched the description of Payne.[14] Then, agents saw the man matching Payne's description exit the house a short while later, access the Cadillac parked in the driveway and then return to the premises.[15]

The Government cites to the Affidavit to demonstrate that on July 13, 2023, Pearl sold cocaine a fourth time to ATF agents and "[a]s with prior sales, Pearl traveled to and from the premises before and after the cocaine sale[;]"[16] and that Pearl made numerous calls to Payne before and after the sale.[17] The Government also cites to the Affidavit to demonstrate that on August 4, 2023, Pearl sold cocaine a fifth time, "following the same pattern of visiting [the premises] and talking to [Payne] via phone before and after selling 125.75 grams of cocaine to ATF agents."[18] And, according to the Government, the Affidavit indicates that agents watching the premises after the deal saw Pearl speak with Payne in the driveway of the premises.[19]

As regards the August 17, 2023, interaction between ATF agents and Pearl and Payne, the Government points to the Affidavit to demonstrate the following. Agents saw Pearl drive a gold Mercedes to Payne's residence, from which Payne exited.[20] Payne entered and exited the car to return to the residence twice before Payne returned to the car and the Mercedes was driven away.[21] Pearl

---

[13] (*Id.*, PageID # 543.)
[14] (*Id.*, PageID #s 543-44.)
[15] (*Id.*, PageID # 545.)
[16] (*Id.*)
[17] (*Id.*)
[18] (*Id.*, PageID # 546.)
[19] (*Id.*, PageID # 547.)
[20] (*Id.*, PageID # 548.)
[21] (*Id.*)

5

and Payne met the undercover ATF agents in the driveway of Pearl's residence on W. 48th St. in Cleveland and purchased 116 grams of cocaine from Pearl as Payne sat in the passenger seat holding a black firearm.[22] When the ATF agent asked for a "calculator" (scale) Payne grabbed a red scale and handed it to Pearl who weighed the cocaine.[23] Payne and the ATF agent and CI spoke about the firearm, Payne is asked if he wants to sell the firearm but Payne declines, and Payne advised that the firearm is an SD (Springfield SD) and took out the magazine and showed it was loaded.[24] The Affidavit included: photographs of Payne holding a gun;[25] and averments that surveillance units followed Payne and Pearl directly back to Payne's house after the cocaine deal,[26] Pearl parked the Mercedes in the driveway while Payne, still holding the red scale, entered the residence;[27] and that Payne had multiple prior felonies for drug trafficking, aggravated assault, and drug possession, each of which prohibited his possession of a firearm.[28]

On August 28, 2023, or 11 days after law enforcement's last interaction with Payne, Magistrate Judge Armstrong signed the search warrant, based upon the Affidavit that according to the Government, "presented more than enough facts to show probable cause in support of law enforcement's request [for the warrant].[29]

**Law and Analysis**

---

[22] (*Id.*)
[23] (*Id.*)
[24] (*Id.*)
[25] (*Id.*, PageID # 549.)
[26] (*Id.*)
[27] (*Id.*)
[28] (*Id.*, PageID # 540.)
[29] (Doc. No. 69, PageID # 602.)

6

A. **Probable Cause for the Search Warrant**

The Fourth Amendment provides that "no [w]arrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[P]robable cause exists when an affidavit shows a 'fair probability' that criminal evidence will be found in the place to be searched." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021). Probable cause does not require an actual showing of criminal activity at a particular location, but a "probability or substantial chance of criminal activity." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991).

"[A] probable-cause 'nexus' must connect . . . the specific place that officers want to search . . . [with] the specific things that they are looking for." *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021). Law enforcement can infer a nexus from "the type of crime being investigated, the nature of things to be seized, and the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014).

When applying the probable cause standard, "the [issuing] magistrate [judge] uses a practical standard, based on factual and practical considerations of everyday life, rather than a technical standard." *United States v. Sneed*, 385 F. App'x 551, 556 (6th Cir. 2010) (citing *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)). Courts should "accord the magistrate [judge]'s determination" of probable cause "great deference." *United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013) (quoting *United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008)). The question is "whether the magistrate [judge] had a substantial basis for his conclusion" that probable cause existed. *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019). "'Probable cause exists when

there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.'" *United States v. Davidson*, 936 F.2d 856,  859 (6th Cir. 1991)(quoting *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985) (per curiam)).

       This Court's review of the Affidavit reveals a substantial basis for concluding that the search of the premises would uncover evidence of criminal activity, even though the ATF did not observe the actual drugs going in and out of the premises.  The totality of the circumstances reported in the Affidavit demonstrated a "pattern of activity" consistent with drug trafficking and possession of a firearm by Payne.  The Affidavit outlined in detail the in-person contacts and telephone communications by and between Pearl and Payne before and after each of the five buys and trips between the premises and the locations of the drug sales that Pearl made on each occasion.  The Affidavit also included averments that before the drug buy on August 17, 2023 the ATF personally witnessed Pearl and Payne arrive together at the premises, Payne enter and exit the premises twice before entering the Mercedes; personally purchased the 116 grams of cocaine with Payne providing the scale to weigh the drugs; personally saw Payne holding the firearm; and saw Pearl and Payne proceed back to the premises after the drug sale and enter the premises, with Payne carrying the scale. Indeed, the Affidavit includes averments that Payne possessed a firearm during a drug transaction, and he was prohibited from possessing it because he had multiple felony convictions; Payne did not want to sell it, indicating to SA Loerch that he intended to keep it at the premises along with what ATF believed were drugs inside the premises.[30]

---

[30] (Doc. No. 60, PageID # 550-51.)

Giving Magistrate Judge Armstrong's probable cause determination deference as it must, and because only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause, the Court finds that the "totality of the circumstances" presented in the Affidavit provided a substantial basis for finding probable cause to search the premises, i.e., Payne's residence.

Accordingly, Defendant's Motion is DENIED.

**IT IS SO ORDERED.**

Date: May 7, 2025

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE