IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23CR469 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | |
| CLARENCE PAYNE, | ) | UNITED STATES' TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its counsel, Carol M. Skutnik, Acting United States Attorney, and Adam Joines and Jennifer King, Assistant United States Attorneys, respectfully submits the following trial brief in accordance with this Court's Trial Order (R. 17).

I. **CONTROLLING LAW**

    A.    Controlled Substance Offenses (Counts 7, 12, and 13)

The Second Superseding Indictment (R. 27, hereinafter referred to as "indictment") charges Defendant Clarence Payne with three counts of violations under Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C), which provides:

> [I]t shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .

Count 7 charges the defendant with distribution of a controlled substance (cocaine); Counts 12 and 13 separately charge the defendant with possession with intent to distribute controlled substances (cocaine, heroin, and fentanyl).

First, for Count 7, to sustain its burden of proof, the United States must prove all of the following elements beyond a reasonable doubt.

1. That the defendant knowingly distributed cocaine.

2. That the defendant knew at the time of distribution that the substance was a controlled substance.

The United States may also prove that Payne aided and abetted this crime by proving, beyond a reasonable doubt:

1. That the crime of Distribution of a Controlled Substance (Cocaine) was committed.

2. That the defendant helped to commit the crime or encouraged someone else to commit the crime.

3. That the defendant intended to help commit or encourage the crime.

Sixth Circuit Pattern Criminal Jury Instructions, 2025 Edition, Sections 14.02A and 4.01

For each of Counts 12 and 13, to sustain its burden of proof, the United States must prove all of the following elements beyond a reasonable doubt:

1. That the defendant knowingly or intentionally possessed a controlled substance. For Count 12, the controlled substance alleged is cocaine. For Count 13, the controlled substances alleged are heroin and fentanyl.

2. That the defendant intended to distribute the specified controlled substance.

Sixth Circuit Pattern Criminal Jury Instructions, 2025 Edition, Section 14.01.

  B. <u>Felon in Possession of a Firearm (Counts 10 and 11)</u>

The indictment also charges Defendant Clarence Payne with two counts of possessing a firearm after being convicted of an offense punishable by imprisonment for more than one year. The relevant statute on this offense is Title 18, United States Code, Section 922(g)(1), which provides:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess in or affecting commerce, any firearm or ammunition . . . .

Count 10 alleges possession on August 17, 2023, Count 11 alleges possession on August 30, 2023. To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

1. That the defendant has been convicted of a crime punishable by imprisonment for more than one year.

2. That the defendant, following his conviction, knowingly possessed a firearm specified in the indictment.

3. That at the time the defendant possessed the firearm, he knew he had been convicted of a crime punishable by imprisonment for more than one year.

4. That the specified firearm and ammunition crossed a state line prior to the alleged possession.

Sixth Circuit Pattern Criminal Jury Instructions, 2025 Edition, Section 12.01; *United States v. Kincaide*, 145 F.3d 772, 782 (6th Cir. 1998).

    C.    <u>Possession of a Firearm in Furtherance of Drug Trafficking (Count 8)</u>

Finally, the indictment charges Defendant Clarence Payne with one count of possession of a firearm in furtherance of a drug trafficking crime. The relevant statute for this offense is Title 18, United States Code, Section 924(c)(1)(A)(i), which provides:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, . . . in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years . . . .

To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

1. That the defendant committed the crime charged in Count 7. Distribution of a controlled substance is a drug trafficking crime which may be prosecuted in a court of the United States.

2. That the defendant knowingly possessed a firearm.

3. That the possession of the firearm was in furtherance of the crime charged in Count 7.

Sixth Circuit Pattern Criminal Jury Instructions, 2025 Edition, Section 12.03.

**II.     ANTICIPATED EVIDENTIARY AND LEGAL ISSUES**

    A.     Statement of the Facts

In June 2023, special agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began an initiative with confidential informants (CIs) and other law enforcement in Cleveland, Ohio to investigate drug and firearm crime. In so doing, undercover agents began purchasing cocaine and firearms from Harold Pearl, who was also charged in this case and has pleaded guilty to his offenses. Agents purchased cocaine from Pearl, who indicated that he had a source of supply for the cocaine. That source was later determined to be Defendant Clarence Payne, who both oversaw Pearl's cocaine dealing and himself participated in a cocaine sale on August 17, 2023. Payne also carried a firearm during that sale, which agents found in his house next to large amounts of cocaine, heroin, and fentanyl on August 30, 2023. Although Payne is charged with his direct conduct on those dates, his behind-the-scenes involvement in Pearl's cocaine dealing provides context for his intention to sell his cocaine and to possess his firearm to further his drug trafficking scheme.

The United States intends to offer evidence of the following at trial:

On July 6, 2023, Pearl sold 55.63 grams of cocaine to ATF undercover agents (UCs). Pearl sold the cocaine outside his home on W. 48th Street in Cleveland, Ohio. But about half an hour before the sale, Pearl traveled from his home (where he was when he spoke with the CI to arrange

4

the deal) to Payne's house on W. 117th Street in Cleveland. Pearl returned to his house on W. 48th St., immediately sold the cocaine, and fifteen minutes later returned to Payne's house. Special agents familiar with drug trafficking given their training and experience will testify that this pattern of travel is consistent with a dealer obtaining drugs from a source of supply, conducting the sale, and returning to the source to drop off the cash. During the deal, Pearl made references to his source of supply, explaining that he would only be able to make the sale for larger quantities of cocaine if he had a price that made it worthwhile and agreeable to the source. Special agent witnesses familiar with drug trafficking will testify that drug dealing is a business and that discussions like negotiations about quantities and price occur just like they do in legitimate business settings.

On July 13, 2023, Pearl sold 110.23 grams of cocaine to UCs. Several days before, Pearl confirmed via phone with the CI that his source of supply would agree to the deal of four ounces (slightly more than 110 grams) for $3,900. The day of that deal, Pearl traveled to Payne's house on W. 117th St. before returning to his house on W. 48th St. Once back, he sold the cocaine, which included allowing the UC to weigh the drugs. Four minutes after the deal finished, Pearl drove to Payne's house before he returned home for the day. Pearl later contacted the CI to tell him that he provided 10 g of cocaine less than he intended.

On August 4, 2023, Pearl sold 129.5 grams of cocaine to UCs. Consistent with prior deals, he arranged the exchange while at his house before he traveled to Payne's house and returned to W. 48th St. to conduct the deal. Pearl weighed the drugs and negotiated a final price given that the purchase of "four and a split," which UCs will explain means 4.5 ounces. Approximately twenty minutes after the UCs left, Pearl returned to Payne's house.

5

On August 17, 2023, Pearl and Payne together sold 113.7 grams of cocaine. After arranging for the sale at the usual spot near Pearl's house, Pearl traveled to Payne's house, and the two traveled together from W. 117th St. to W. 48th St. During the deal, Pearl sat in the driver's seat of his car while Payne sat in the passenger seat. Payne held a pistol, which he laid on his thigh that was visible to the UCs. When the UCs asked for the drugs to be weighed, Payne handed Pearl a scale, which he used to weigh the cocaine on the driver's side floorboard. After payment, Payne showed the UC his pistol by taking the magazine out, describing it as an "XD" and a ".40." A special agent familiar with drug trafficking will testify that visibly holding a pistol during a drug deal is a way to facilitate the transaction because it provides a show of force that protects the illegal business transaction. Witnesses will also explain how Payne, as the source of supply to Pearl, helped Pearl by riding along to ensure the deal occurred properly. In that way, Payne was protecting his own drug trafficking enterprise by confirming that sufficient payment was given for the drugs he provided, which he reinforced with a threat of force that he would use the gun if needed. After the deal, Pearl and Payne drove back to Payne's house.

On August 30, 2023, ATF SAs executed a search warrant and arrest warrant for Payne at the address at 3464 W. 117th St., Cleveland, Ohio. This address is Payne's listed residence and is where Pearl would travel before and after the cocaine and firearm purchases discussed herein. During the search, ATF SAs discovered a Springfield Armory, Model: XD-40 Mod.2 4.0 Service Model Black with Grip Zone, .40 caliber pistol, serial number GM159624. The firearm was in a stairwell, tucked near a void in the wall where the roof meets the wall. It was found right next to cocaine in eleven different baggies packaged similarly to what agents previously purchased from Pearl in the prior weeks. These bags altogether weighed approximately 292.88 grams. Three of the bags had 10.31 grams of a mixture of heroin and fentanyl.

An ATF nexus expert will testify that the Springfield pistol is an XD model and .40 caliber, as described by Payne on August 17, 2023.  He will also explain that it was not manufactured in Ohio and therefore must have traveled in interstate commerce to be found in Ohio.  This firearm was reported as stolen out of Cleveland on June 8, 2019.  Because Payne has multiple prior felony convictions,[1] he cannot legally possess this firearm.

B.      Res Gestae and Rule 404(b) Evidence

The United States previously notified Payne and the Court that it intends at trial to introduce evidence of other cocaine deals between Pearl and UCs for which Payne was not present because, among other reasons, they "show the connections between Pearl and Payne" and establish evidence of a drug dealing relationship between the two.  (R. 50: Motion to Deem Proposed Evidence "Inextricably Intertwined" with Charged Conduct or Res Gestae Evidence; or, Alternatively, Notice of United States' Intent to Introduce Evidence under Rule 404(b) of the Federal Rules of Evidence, PageID 406–23).  The United States demonstrated that such evidence of prior cocaine sales on June 21, June 30, July 6, July 13, and August 4, 2023 might include videos and photographs of Payne's residence, location data showing Pearl's location, phone calls, and observations of ATF special agents during the cocaine sales, all toward showing Payne's involvement in those sales and his intention to traffic cocaine in his possession.  It argued that such

---

[1] Payne's prior convictions include Drug Trafficking, on or about March 31, 2005, in Case Number CR-04-459331, in Cuyahoga County Court of Common Pleas; Drug Trafficking, on or about September 13, 2006, in Case Number CR-06-479726, in Cuyahoga County Court of Common Pleas; Drug Trafficking, on or about September 13, 2006, in Case Number CR-06-480482, in Cuyahoga County Court of Common Pleas; Drug Trafficking, on or about November 24, 2008, in Case Number CR-08-514363, in Cuyahoga County Court of Common Pleas; Aggravated Assault and Drug Possession, on or about January 18, 2011, in Case Number CR-10-536188, in Cuyahoga County Court of Common Pleas; and Drug Trafficking, on or about October 14, 2015, in Case Number CR-15-594929, in Cuyahoga County Court of Common Pleas.  All of these have been alleged in the indictment.

evidence is both "inextricably intertwined" with the conduct charged against Payne because it provides background and context, and other acts evidence under Federal Rule of Evidence 404(b) because it is provided "to show Payne's state of mind, opportunity, intent, plan, knowledge, identity, absence of mistake, and lack of accident." (*Id.*, PageID 416–21).

The Court granted the United States' motion in part by permitting it to introduce evidence of the July 6, July 13, and August 4, 2023 cocaine deals. (R. 55: Memorandum Opinion and Order, PageID 484–85). It determined that such evidence is both "admissible as *res gestae*" because it is inextricably intertwined with the conduct charged in Count 12, and also that it is admissible under Rule 404(b) to show the element in Count 12 of Payne's intent to distribute cocaine. (*Id.*, PageID 485–86). Consistent with the Order and its motion, the United States will not "over-emphasize Pearl's conduct during the cocaine sales, except here his conduct implicates or otherwise implies Payne's involvement and to give the jury adequate context to the drug sales." (R. 50: Motion, PageID 416). It will need to play videos and explain what happened during the deals, but that presentation will be toward showing how Payne worked with Pearl to facilitate the deals. The United States further, consistent with the Court's Order, drafted a proposed limiting instruction regarding how the jury should interpret evidence of the July 6, July 13, and August 4, 2023 cocaine deals.

Beyond its case-in-chief, the United States reserves the right to cross-examine any defense witnesses with evidence regarding other conduct alleged in the indictment. This includes Pearl's cocaine deals with UCs on June 21 and June 30, 2023, and his possession and sale of firearms on July 24 and August 21, 2023. Should Pearl or Payne choose to take the witness stand, the United States may ask them such questions because their involvement in other activities investigated in this case, including other cocaine deals, illegal possession of firearms, and the sale of firearms,

will concern "the subject matter of the direct examination and matters affecting the witness's credibility. Fed. R. Evid. 611(b).

      C.      <u>Video, Audio, and Transcripts</u>

The United States intends to introduce audio recordings of Harld Pearl's telephone calls with the CI regarding the arrangement or discussion ahead of meeting to deal drugs. They provide relevant context of Pearl's movement on the days in question. These movements in turn relate to Defendant Clarence Payne because the United States intends to show that he was supplying Pearl with the cocaine that UCs purchased on July 6, July 13, and August 4, 2023. All of this evidence falls within the rules of *res gestae* and Federal Rule of Evidence 404(b) to support the charges against Payne for distributing cocaine with Pearl on August 17, 2023 and possessing cocaine with intent to distribute on August 30, 2023. *See* (R. 55: Memorandum Opinion & Order, PageID 474–86 (granting in part the United States' motion to introduce certain evidence of drug transactions on July 6, July 13, and August 4, 2023)). Such recordings provide the jury with an understanding of why UCs traveled to Pearl's house to purchase cocaine, the timing of the deals as it relates to Pearl's back-and-forth movement to Payne's house before and after the deals, and the terms of each deal that show Payne's involvement in them.

The United States has prepared transcripts of portions of the audio that will be played contemporaneously with the audio calls or video recordings. The government has or will provide transcripts to defense counsel, and previously produced all complete audio and video files from which any portions were created. The United States also submitted, as part of the jointly proposed jury instructions, the relevant pattern jury instruction regarding recordings and transcripts as aids in receiving evidence.

The Federal Rules of Evidence require evidence to be authenticated or identified through a showing "sufficient to support a finding that the matter in question is what its proponent claims."

9

Fed. R. Evid. 901(a). By way of example, this can be satisfied with testimony from a witness with knowledge of the matter. Fed. R. Evid. 901(b)(1). For voice identification, opinion testimony by someone who heard the voice "at any time under circumstances connecting it with the alleged speaker" can be used for authentication. Fed. R. Evid. 901(b)(5). For example, courts have permitted a detective and adult parole authority officer to identify voices on a jail call based on prior conversations the officers had with the parties when they became familiar with the voices at any time during the pendency of the investigation or case. *United States v. Simms*, 351 Fed. Appx. 64 (6th Cir. 2009). *See also United States v. Cooke,* 795 F.2d 527 (6th Cir. 1986); *United States v. Rizzo*, 492 F.2d 443 (2nd Cir. 1974). Copies of tape recordings are admissible when a proper foundation is laid as to the copies' accuracy and authenticity. *United States v. DeJohn*, 368 F.3d 533 (6th Cir. 2004).

Several anticipated witnesses for the United States have reviewed recorded phone calls that will be used as exhibits at trial. For phone calls involving a CI overseen by ATF UCs during the drug purchases, ATF UCs have direct access to the phone call recordings, personal interactions with the individuals speaking, and in most instances are with the CI when the calls occurred. ATF Special Agents Russell Johnson, Neddy Fierro, Stephen McGrath, and Gregory Loerch all had interactions and involvement with the individuals participating on recorded phone calls in this case. Each can recognize the participants, including CIs and Harold Pearl. Not only can they testify regarding the voices on the phone calls, they can explain the systems used to capture the recordings and how they know them to be true and accurate recordings of the conversations at issue. For any video, witnesses present for the recorded interaction will testify regarding the events shown and people involved.

D. <u>Hearsay</u>

As part of its case in chief, the United States will introduce evidence related to Harold Pearl's sales to UCs on July 6, July 13, and August 4, 2023. This will include phone calls, video recordings, and testimony regarding certain statements by CIs, Harold Pearl, and or the UCs or third parties. None of those statements are hearsay that might otherwise be inadmissible under Federal Rule of Evidence 802.

Background information that explains how law enforcement came to be involved with a particular defendant is not hearsay, because it is not being offered for the truth of the matter asserted. *United States v. Aguwa*, 123 F.3d 418, 421 (6th Cir.1997). Instead, background information may be admitted to show the effect of hearing that information upon the testifying witness, who subsequently, as a result of the background information, acquires the knowledge that provides the foundation for the witness's testimony. *See United States v. Evans*, 883 F.2d 496, 501 (6th Cir.1989) (background information is admissible to "construct the sequence of events leading up to the drug transaction").

Statements made by the CI and Pearl to arrange drug deals, as well as statements made during drug deals, are provided to show how Harold Pearl acted with Payne later on August 17, 2023, and on his behalf to sell cocaine like that seized from Payne's house on August 30, 2023. Whether or not any particular statement made during those conversations is true is immaterial; rather they are provided as context for Payne's eventual appearance during one of the similarly-structured drug deals, the UCs handling of Payne's appearance during the deal, and as a foundation for UCs to understand how Pearl acted on Payne's behalf. *See United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015) (upholding admission of email containing statements that explained a witness' state of mind and what he was doing).

11

There may be other specific exceptions for statements that allow admission under Federal Rule of Evidence 803 or should otherwise be admitted because it is not hearsay under Rules 801, 804, or 807. In addition to the explanation above, the United States reserves the right to argue in those specific situations that additional exceptions apply.

Additionally, the defendant should be precluded from offering out-of-court statements that are self-serving hearsay. The rule against admitting hearsay creates an exemption for statements made by and offered against opposing parties. Fed. R. Evid. 801(d)(2). But the coverage of this exemption is limited. It does not apply to a party introducing their own statements through other witnesses. It does not cover statements made by the defendant and offered by the defendant. *United States v. Ford*, 761 F.3d 641, 652 (6th Cir. 2014); *United States v. Henderson*, 626 F.3d 326, 344 (6th Cir. 2010). "[S]uch statements are classic, self-serving inadmissible hearsay. It is well accepted that a party's own statement is admissible as non-hearsay only if it is offered against that party." *United States v. Bravata*, No. 11-CR-20314, 2013 WL 692955, at *1 (E.D. Mich. Feb. 26, 2013) (citing *Stalbosky v. Belew*, 205 F.3d 890, 94 (6th Cir. 2000)). If a defendant wishes to introduce her own statements, he can testify. *Ford*, 761 F.3d at 652. But Payne cannot introduce his own self-serving statements from out of court, because they are hearsay.[2]

---

[2] The United States introducing the defendant's statements does not open the door to allow the defendant to introduce other statements under the Rule of Completeness. That Rule is meant to correct misleading impressions by introducing the full writing for context. *Ford*, 761 F.3d at 652. It is not meant to allow in otherwise inadmissible evidence. *Id.* As the Sixth Circuit has observed, "[c]ompleteness, a common-law doctrine, does not outweigh the hearsay rules, because '[h]earsay is not admissible except as provided *by these rules* or other rules prescribed by the Supreme Court pursuant to statutory authority.' Fed. R. Evid. 802 (emphasis added)." *United States v. Shaver*, 89 Fed. Appx. 529, 533 (6th Cir. 2004).

E.     Self-Authenticating Copies of Certified Public Records

The United States intends to introduce certified records of the Defendant's prior convictions if necessary. Fed. R. Evid. 902(4) provides in pertinent part that "no extrinsic evidence of authenticity" is required in order to admit certified copies of public records if the copy is certified as correct by "the custodian or another person authorized to make the certification." Here each record of conviction is certified as true and accurate by the Cuyahoga County Clerk of Courts. As such, the documents relating to Payne's prior convictions are admissible as self-authenticating public records. These documents will only be used should the Defendant not stipulate that prior to his possession of the firearm that was convicted of a crime punishable by more than one year imprisonment and that he had knowledge of this conviction. *See also United States v. Johnson*, 803 F.3d 279, 282 (6th Cir. 2015) (allowing unredacted copies of certified convictions to be admitted into evidence).

The United States also is permitted, if Payne does not stipulate, to introduce evidence of all of his prior convictions that prohibit him from possessing a firearm because they are punishable by a term of imprisonment exceeding one year. *See, e.g.*, *United States v. Smith*, 70 F.4th 348, 354 (6th Cir. 2023) (allowing United States to show evidence of 11 prior convictions in support of a § 922(g)(1) charge, and finding they were not excludable under Federal Rule of Evidence 403). Should Payne continue to reject the United States' offer to stipulate to his prior conviction, prior to trial it requests that the Court advise Payne of the United States' ability to offer such evidence and confirm he does not want to stipulate as offered.

F.     Expert Testimony

Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, the United States previously provided notice to defense counsel that it intends to elicit testimony from Special Agent Shaun Moses and call him as an expert witness in the field of narcotics investigations.

13

The law permits use of law enforcement experts to establish the modus operandi of drug trafficking crimes. *See United States v. Pearce*, 912 F.2d 159, 163 (6th Cir. 1990). Expert testimony of this type is admissible under Federal Rule of Evidence 702 because it assists the jury in understanding the drug trade, an area which is "not within the experience of the average juror." *United States v. Thomas*, 74 F.3d 676, 682-83 (6th Cir. 1996), *abrogated on other grounds by Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997); *accord United States v. Ham*, 628 F.3d 801, 804-05 (6th Cir. 2011). This type of testimony is useful because "the average juror is unlikely to understand the significance of drug paraphernalia, quantities, and prices or appreciate the difference between 'street level' drug dealers and other types of distribution operations." *Thomas*, 74 F.3d at 682. Expert testimony may be admitted to explain the close connection between firearms and drug trafficking (*United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004)), the items commonly possessed by drug dealers (*Thomas*, 74 F.3d at 683), and the quantity of drugs consistent with distribution rather than personal use (*Ham*, 628 F.3d at 805).

The Sixth Circuit recently found that a trial court did not plainly err in admitting testimony of two witnesses with extensive experience in law enforcement and drug interdiction in particular, and held that their testimony was helpful to the jury in understanding the drug trafficking evidence presented. *United States v. Meadows*, 2020 WL 4558647 (6th Cir. 2020). Testimony included the general frequency with which drug dealers carry firearms; how drug traffickers tend to deal in cash; some of the common tools of drug dealing, including cutting agents and digital scales; and whether heroin and fentanyl are typically trafficked together. *Id.* The agents also provided related testimony concerning the typical street value of heroin and fentanyl as well as the customary amount of heroin consumed by users daily. *Id.* This expert testimony was helpful to the jury and

14

furthermore relevant to show that the defendant intended to sell, rather than merely use, the drugs found, and that the firearm recovered was linked to the defendant's drug dealing. *Id*.

The United States intends to elicit testimony from Special Agent Shaun Moses to show that Payne intended to distribute the narcotics found in his house and that they were not for personal use. He will also discuss items found with the drugs, such as baggies and a firearm, and what these items are commonly used for. He will also discuss why drug traffickers commonly possess firearms, including how Payne's possession of a firearm on August 17, 2023 during the cocaine sale with UCs furthered that transaction. His testimony will explain how Payne facilitated that drug deal, and also how his role as a source of supply for Pearl allowed him to traffic cocaine. He will also discuss how narcotics are brought into the Cleveland area, packaged, distributed, and sold. The United States will lay the necessary foundation to establish that SA Moses has extensive training and experience in law enforcement and particularly drug interdiction. His testimony is proper under the case law cited above.

The United States also intends to call ATF Special Agent John Sabol and Edgar Andrus, as needed, to provide expert testimony on their respective topics of expertise. The United States disclosed all experts and the areas of their proposed testimony previously to the Court and counsel for Defendant. *See* (R. 72: Notice of Expert Witness Testimony Pursuant to Fed. R. Crim. P. 16(g) for Special Agent John Sabol, PageID 621–22; R. 73: Notice of Expert Witness Testimony Pursuant to Fed. R. Crim. P. 16(g) for Special Agent Shaun Moses, PageID 631–38; R. 83: Notice of Expert Witness Testimony Pursuant to Fed. R. Crim. P. 16(g) for Edgar Andrus, PageID 667–69). Where applicable, the United States produced copies of expert reports to Defendant in discovery. Each of these individuals is qualified as an expert under the Federal Rules of Evidence, and his or her testimony would assist the jury in understanding the evidence and determining the

facts at issue. As explained below, several topics on which these individuals may testify concern the stipulations that the United States has proposed to Defendant. If a given stipulation is signed, the United States would be unlikely to call the witness that would otherwise testify on that topic.

    G.    <u>Forfeiture</u>

The United States alleged forfeiture in the indictment, specifically that "any and all property constituting, or derived from, any proceeds they obtained, directly or indirectly, as the result of such violations; any and all of their property used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations [charged in Counts 7, 8, 10, 11, 12, and 13]; and all firearms and ammunition involved in or used in the commission of such violations." If convicted of any applicable counts, the United States requests that the jury complete a special verdict form and be instructed to make a finding as to forfeiture. If the Court permits and Payne so agrees, the United States will agree at that point to stipulate to such findings, in particular that Payne forfeits his ownership and interest in the Springfield pistol seized on August 30, 2023. The United States will prepare and discuss such options with counsel ahead of trial.

**III.**    **<u>TRIAL DOCUMENTS</u>**

    A.    <u>Stipulations</u>

On July 9, 2025, the United States provided seven proposed stipulations to Payne's attorney. Payne signed two of the stipulations regarding his home address being at 3464 W. 117th St., Cleveland, Ohio, and that a transcript of the July 23, 2024 court hearing is an authentic, true, and accurate transcription of statements made during that hearing. (R. 90). To date, Payne has not signed the following other stipulations proposed by the United States:

    1.    That prior to the date of the crime charged in the indictment, Clarence Payne was convicted of a crime punishable under the laws of the state of Ohio by a term of imprisonment exceeding one year, and the defendant had knowledge of this conviction.

        2.        That the results of the drug lab report testing show the suspected narcotics are cocaine, heroin, or fentanyl, or some other substance, and their weights.

        3.        That T-Mobile records of cellular phone data for Pearl's phone are authentic, true, and accurate copies of the original records.

        4.        That Verizon records of cellular phone data for Payne's phone are authentic, true, and accurate copies of the original records.

        5.        That the records relating to the ScramNet GPS location history for Harold Pearl records are authentic, true, and accurate copies of the original records kept in the ordinary course of business by the Cuyahoga County Sheriff's Office Electronic Monitoring Unit.

### B. Proposed Jury Instructions

The United States and Defendant have reviewed and agreed to its proposed jury instructions. They respectfully request that the Court submit to the jury the proposed instructions filed under (R. 89).

### C. Proposed *Voir Dire* Questions

The United States respectfully requests that the Court direct the proposed questions filed under (R. 88) to the jury panel during *voir dire* examination.

### D. Preliminary Statement

The United States and Defendant have reviewed and agreed to a joint preliminary statement. They respectfully request that the Court use the proposed preliminary statement filed under (R. 87).

### E. Witness and Exhibit Lists

The United States has filed its anticipated Witness List contemporaneously with this filing under (R. 91). The United States will, later this week and consistent with the Court's Trial Order, exchange its proposed Exhibit List with counsel. The United States will mark all proposed exhibits before trial in accordance with the Court's Order, and will provide a copy of the exhibits the morning trial begins.

## IV. COURTROOM PROCEDURE

### A. *Jencks* Material

The United States will provide *Jencks* material to the defense in a timely manner and in accordance with this Court's Order.

### B. Sequestration of Witnesses and Presence of Government Agent at Trial

The United States respectfully requests that the Court issue a witness-sequestration order pursuant to Federal Rule of Evidence 615. The government designates Special Agent Gregory Loerch from the Bureau of Alcohol, Tobacco, Firearms, and Explosives as its representative in this case to be present at counsel table throughout the trial. SA Loerch's presence in the courtroom during trial is essential to the presentation of the government's case. *See* Fed. R. Evid. 615(b) (specifically excluding from a sequestration order "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney"); Fed. R. Evid. 615(c) (providing an additional exception for essential witnesses).

## V. ESTIMATED LENGTH OF TRIAL

The United States anticipates completing its case-in-chief in approximately one and a half days.

## VI. CONCLUSION

The United States is prepared to submit additional briefing on any issue should the Court or circumstances require.

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney

By: s/ Adam Joines
    Adam Joines (OH: 0094021)
    Jennifer King (OH: 0089375)
    Assistant United States Attorneys
    United States Court House
    801 West Superior Avenue, Suite 400
    Cleveland, OH 44113
    (216) 622-3929
    (216) 622-3759
    (216) 522-8355 (facsimile)
    Adam.Joines@usdoj.gov
    Jennifer.King@usdoj.gov
    *Counsel for government*